[No. B169025. Second Dist., Div. Two. May 6, 2004.]

ADEL OMAR, Plaintiff and Respondent, v.
RALPHS GROCERY COMPANY et al., Defendants and Appellants.

## Counsel

Littler Mendelson and Henry D. Lederman for Defendants and Appellants.

Greenberg & Weinmann, Paul A. Greenberg and Iris Weinmann for Plaintiff and Respondent.

## Opinion

**DOI TODD, J.**—Ralphs Grocery Company and Mark Strauch appeal the trial court's denial of their motion to compel arbitration, which was filed as

part of a motion for summary judgment. Appellants contend the trial court erred in failing to determine the two "gateway" issues of arbitrability: (1) whether there is an enforceable agreement to arbitrate, and (2) whether the agreement covers the disputes at issue. We agree and reverse, and remand the matter to the trial court for a determination of these issues. We also determine that in this case the issue of whether appellants waived the right to compel arbitration must be decided in the first instance by an arbitrator and not the court.

## FACTUAL AND PROCEDURAL BACKGROUND

Respondent Adel Omar was hired by Ralphs's predecessor, Hughes Markets, in 1986. In 1990 he was promoted to manager of operations at the Ralphs store on West Pico Boulevard in Los Angeles, a position he held for the next 11 years. On September 14, 2001, Ralphs's district manager, Scott Drew, signed a declaration stating that on that day he delivered a copy of Ralphs's Mediation and Binding Arbitration Policy (the arbitration agreement) to respondent, along with an Employee Acknowledgment form. In a subsequent declaration, Drew stated that he also delivered to respondent a memorandum from the group vice president of Ralphs's Human Resources and Labor Relations department which explained the company's dispute resolution program (DRP) and informed employees that even if they "fail or refuse to sign and return the Employee Acknowledgment, the DRP Mediation & Binding Arbitration Policy will still be a binding term of [their] employment with the Company." Respondent denied receiving the arbitration agreement during his employment. It is undisputed that respondent did not sign the Employee Acknowledgment form.

The arbitration agreement provides that it applies to "any employment-related disputes" that arise between employees and Ralphs and "requires that any Employee who wishes to initiate formal proceedings to resolve any employment-related disputes must submit the matter to final and binding arbitration." The arbitration agreement further provides that "[a]rbitration as described in this Policy is the sole and exclusive remedy for any dispute(s) arising out of or related to the employer/employee relationship." The arbitration agreement also provides that it does not prevent employees or Ralphs from agreeing voluntarily to submit the disputes to mediation before beginning any arbitration proceedings. The arbitration agreement specifies that it "is subject to and governed by the Federal Arbitration Act, 9 U.S.C. section 1 et seq." (FAA), that the parties will select the arbitrator by mutual agreement and that Ralphs will pay the arbitration fees "in all cases where required by law."

On November 28, 2001, respondent's employment was terminated for allegedly making offensive comments to another employee on November 7,

2001. On December 12, 2001, respondent wrote to Ralphs apologizing for his actions and requesting that his employment be reinstated. On December 17, 2001, Ralphs sent respondent a notice of dispute form to be completed and signed by him. According to respondent, on December 20, 2001, he hand-delivered a letter to Christine Bowers, vice president of human resources, in which he stated that he wanted to participate in mediation as soon as possible but that he did not understand what an arbitration was. Ms. Bowers denied receiving the letter. Respondent signed and returned the notice of dispute form on January 29, 2002, which stated that "this form is to be used to initiate a complaint or request for dispute resolution under the company's policy against unlawful harassment and discrimination and/or dispute resolution procedure."

On May 2, 2002, Ralphs wrote to respondent advising him that it had determined his termination was proper and that he could either request mediation or demand final and binding arbitration. A copy of the arbitration agreement and request for mediation and arbitration forms were enclosed. Respondent signed the request for mediation form, which stated: "I further understand and agree that if the complaint/dispute is not resolved through mediation and I wish to pursue this matter further, I must submit this complaint/dispute to final & binding arbitration pursuant to the policy." His attorney returned this form to Ralphs on May 10, 2002. On October 9, 2002, respondent's attorney sent a letter to Ralphs in which he reiterated his client's request to mediate his claims. On October 11, 2002, Ralphs's in-house lawyer responded by letter, stating that Ralphs had reviewed and considered respondent's request for mediation and determined that the dispute was not appropriate for mediation. The letter also stated that respondent's dispute could only be submitted to final and binding arbitration, and that if he commenced any other type of formal dispute resolution, Ralphs would consider such action to be a repudiation of the arbitration agreement and would seek summary judgment and to recover its damages.

On October 15, 2002, respondent's attorney wrote to Ralphs asking Ralphs to suggest how "the proposed mechanics of the subject arbitration would play out" and to clarify whether Ralphs would pay all the costs of an arbitration. The same day, Ralphs wrote back stating that the "mechanics" of arbitration were clearly spelled out in the arbitration agreement and enclosed another copy of the agreement. On November 12, 2002, respondent's attorney again asked Ralphs to clarify whether Ralphs was agreeing to pay the costs of arbitration and to advise of Ralphs's proposed method for choosing an arbitrator. On November 12, 2002, respondent's attorney also served Ralphs with a complaint and demand for arbitration "subject to the Court's determination whether the claims are subject to an enforceable arbitration agreement."

On November 25, 2002, respondent filed his complaint in the Los Angeles Superior Court against Ralphs and his former supervisor, Mark Strauch. The complaint asserted eight causes of action: for declaratory relief, rescission of the arbitration agreement based on fraud, harassment and discrimination based on race, age and religion and retaliation in violation of the Fair Employment and Housing Act, wrongful termination in violation of public policy, breach of implied contract, and violation of Business and Professions Code section 17200 et seq. Respondents answered the complaint and the parties engaged in written discovery on the issue of arbitrability.

On April 1, 2003, appellants filed a combined motion for summary judgment and to compel arbitration. Appellants requested that the motion to compel be granted in the event summary judgment was denied. At the June 18, 2003 hearing on the motion, the trial court denied the motion for summary judgment on the grounds that triable issues of material fact existed regarding the enforceability of the arbitration agreement. Specifically, the court found there were four triable issues: (1) whether respondent ever received the arbitration policy in September 1991 while working for Ralphs, (2) whether the arbitration policy is a contract of adhesion, (3) whether the arbitration policy is procedurally and substantively unconscionable, and (4) whether appellants waived their right to request or compel arbitration, having given respondent the "royal run-around and delayed it so long." The court also denied the motion to compel arbitration, but did not specify its reasons. Appellants challenge only that portion of the court's ruling denying the motion to compel arbitration.

## DISCUSSION

### 1. *Standard of Review*

As an initial matter, the parties dispute the proper standard of review. Appellants assert that interpretation of the FAA presents questions of law for de novo review, while respondent asserts that the trial court's factual finding that appellants waived their right to compel arbitration must be reviewed under the substantial evidence test. It is well settled that we review de novo the legal question whether the FAA required the court to grant appellants' motion to compel arbitration. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856]; *Basura v. U.S. Home Corp.* (2002) 98 Cal.App.4th 1205, 1210–1211 [120 Cal.Rptr.2d 328]; *Ralphs Grocery Company v. Massie* (2004) 116 Cal.App.4th 1031 [11 Cal.Rptr.3d 65] (*Ralphs*).)

## 2. *The Matter Must Be Remanded for the Trial Court's Determination of the Question of Arbitrability*

Appellants contend the trial court exceeded its authority in determining that triable issues of material fact existed regarding the enforceability of the arbitration agreement. Citing *Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 84 [154 L.Ed.2d 491, 123 S.Ct. 588] (*Howsam*), appellants argue that a trial court may consider only two "gateway issues" of arbitrability: (1) whether there is an agreement to arbitrate between the parties, and (2) whether the agreement covered the dispute at issue.

As the court in *Howsam* explained, the phrase "question of arbitrability" has a limited scope and applies only "in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter." (*Howsam, supra*, 537 U.S. at p. 83.) "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide. . . . Similarly, a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." (*Id.* at p. 84.) The court also instructed that issues of substantive arbitrability are for a court to decide while issues of procedural arbitrability are for an arbitrator to decide. (*Ibid.*) Such procedural issues to be decided by an arbitrator include allegations of waiver and delay and whether prerequisites such as time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate have been met. (*Ibid.*)

Appellants also cite two subsequent Supreme Court cases. In *PacifiCare Health Systems, Inc. v. Book* (2003) 538 U.S. 401 [155 L.Ed.2d 578, 123 S.Ct. 1531], the court considered whether parties could be compelled to arbitrate claims arising under RICO when the arbitration agreements could be construed to limit the arbitrator's authority to award damages. The court found that "since we do not know how the arbitrator will construe the remedial limitations, the questions whether they render the parties' agreements unenforceable and whether it is for courts or arbitrators to decide enforceability in the first instance are unusually abstract." (*Id.* at p. 407.) Citing *Howsam*, the court held that in light of the presumption in favor of arbitration, the preliminary question whether the remedial limitations at issue prohibit an award of RICO treble damages is not a question of arbitrability for the court to decide. (*PacifiCare*, at p. 407, fn. 2.) The court found the proper course was to compel arbitration. And in *Green Tree Financial Corp. v. Bazzle* (2003) 539 U.S. 444 [123 S.Ct. 2402, 156 L.Ed.2d 414,], the Supreme Court determined that the issue of whether an arbitration clause allowed class arbitration was a matter for the arbitrator, not the court, to decide.

Here, the trial court did not rule upon the gateway issues of arbitration. Instead, the court merely determined that triable issues of fact existed regarding the enforceability of the arbitration agreement. In *Ralphs*, the appellate court found that where the trial court had failed to determine the first gateway dispute of arbitrability, i.e., whether the arbitration agreement was enforceable, the court prejudicially erred by not following *Howsam's* "mandated procedures in deciding whether to compel arbitration." (*Ralphs*, *supra*, 116 Cal.App.4th at p. 1039.) The court therefore reversed the order denying the petition for arbitration and remanded the matter to the trial court to determine the first gateway issue.

■ Similarly here, the court's order denying arbitration must be reversed and the matter remanded for the trial court to decide whether there is an enforceable arbitration agreement between the parties. In this regard, we note that the trial court did not make a distinction between what appellants refer to as the "pre-dispute agreement to arbitrate" and the "post-dispute agreement to arbitrate." Appellants assert that even if the court determines there was no valid arbitration agreement between the parties while respondent was still employed, respondent nevertheless agreed to arbitrate his claims after his November 7, 2001 termination when he signed and returned to Ralphs his notice of dispute form on January 29, 2002, and again when his attorney returned to Ralphs respondent's request for mediation form. Both forms indicated that disputes not resolved through discussions with management or through mediation could only be further pursued through arbitration. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 103, fn. 8 [99 Cal.Rptr.2d 745, 6 P.3d 669] [noting that such agreements are not adhesive].) In the event the trial court determines that the predispute agreement is unenforceable, it should determine the enforceability of the postdispute agreements.

If the trial court finds an enforceable arbitration agreement between the parties, the court must then determine the second gateway issue: whether respondent's claims are covered by the agreement.

### 3. *Waiver of Arbitration Agreement*

Respondent contends that even if a valid and enforceable agreement to arbitrate is found, appellants nevertheless waived their right to compel arbitration. The trial court's ruling in this regard is unclear. At the beginning of the hearing on appellants' motion, the trial court stated that its tentative ruling was to find a triable issue of fact as to whether appellants had waived their right to compel arbitration. Later in the hearing, the trial court stated, "I feel comfortable in finding based on the evidence submitted to me that Ralphs waived the right to arbitrate." The minute order does not clarify the

ruling as it simply incorporates the court's findings as reflected in the notes of the court reporter at the hearing. Nevertheless, in light of the trial court's comments on the waiver issue, we believe it is necessary to address the question of whether the trial court or an arbitrator should consider the waiver issue.

Respondent asserts that the issue of waiver was properly before the court pursuant to Code of Civil Procedure section 1281.2, subdivision (a), which provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner."

Appellants, on the other hand, contend that because the arbitration agreement is governed by the FAA and does not expressly incorporate California law, Code of Civil Procedure section 1281.2 is inapplicable and federal law applies. In *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 [8 Cal.Rptr.3d 517, 82 P.3d 727], our Supreme Court had occasion to discuss the similarities of federal and state law on the issue of waiver of an arbitration agreement. The court noted that like section 1281.2, the FAA provides that a district court, upon being satisfied that the issue in controversy is arbitrable, " 'shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.' " (*St. Agnes Medical Center*, at p. 1194; 9 U.S.C. § 3.)

The precise issue of whether it was proper for the court rather than the arbitrator to determine the issue of waiver in the first instance was not before the *St. Agnes* court. But appellants argue that the sole exception to the rule that arbitrators and not courts decide the issue of waiver is when the claim of waiver is based on litigation conduct. In *Thorup v. Dean Witter Reynolds, Inc.* (1986) 180 Cal.App.3d 228 [225 Cal.Rptr. 521], in which the agreement was governed by the FAA, the court stated that laches, sometimes classified as waiver, is an arbitrable issue. "Whether one party is in default under the arbitration agreement by reason of delay in requesting arbitration is solely a question for the arbitrator." (*Id.* at p. 235.) The court noted, however, that where waiver is based upon conduct related to the judicial process, i.e., litigation conduct, the existence of waiver is a question for the court to decide. (*Id.* at p. 234.)

Appellants argue that pursuant to *Howsam*, procedural issues like waiver should be decided by the arbitrator and not the court: " ' "procedural"

questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide. [Citation.] So, too, the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.' " (*Howsam, supra,* 537 U.S. at p. 84, citing *Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24–25 [74 L.Ed.2d 765, 103 S.Ct. 927].)

The issue in *Howsam* was whether the court or an arbitrator should apply the National Association of Securities Dealers (NASD) rule that a dispute is ineligible for submission to arbitration after six years have elapsed from the occurrence of the dispute. The Supreme Court concluded that the applicability of the time limit rule was a matter presumptively for the arbitrator, not for the judge. (*Howsam, supra,* 537 U.S. at p. 85.) "The time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.' " (*Ibid.*)

Although the issue of waiver was not before the court in *Moses,* the court was confronted with the question of whether to stay a federal action pending resolution of a concurrent state-court suit. (*Moses H. Cone Hospital v. Mercury Constr. Corp., supra,* 460 U.S. at p. 4.) The court concluded that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." (*Id.* at pp. 24–25.)

In California Practice Guide: Alternative Dispute Resolution (The Rutter Group 2003) paragraphs 5:170 to 5:172, pages 5-101 to 5-102, the authors state that whether waiver claims are determined by the court or the arbitrator depends on whether the arbitration agreement is governed by federal or state law. The authors state that under California law the court determines waiver, while under federal law the arbitrator must decide whether the delay in demanding arbitration was unreasonable and prejudicial and, where the delay is unrelated to the litigation process, "it is improper for the judge to decide this issue." (*Ibid.,* citing to *Howsam, supra,* 537 U.S. 79, *Thorup v. Dean Witter Reynolds, Inc., supra,* 180 Cal.App.3d 228, and *ATSA of California, Inc. v. Continental Ins. Co.* (9th Cir. 1983) 702 F.2d 172, 175 ["A dispute about a waiver of arbitration may properly be referred to the arbitrator"].)

■ In light of the foregoing, we conclude that the issue of waiver must be determined by an arbitrator here because all of respondent's waiver allegations involve nonlitigation conduct[1] and necessitate interpretation of the arbitration agreement. In response to the motion to compel arbitration, respondent argued that appellants waived the right to compel arbitration by (1) unreasonably delaying in proceeding under Ralphs's dispute resolution program, (2) failing to satisfy a condition precedent by refusing to engage in mediation, (3) failing to confirm whether it would pay all costs associated with an arbitration, and (4) failing to work with respondent to select an arbitrator.

The arbitration agreement addresses each of these issues to some extent. With respect to delay, the agreement provides that it is "aimed at resolving employment-related disputes quickly and fairly, to the benefit of everyone involved" and that "any Employee who wishes to initiate formal proceedings to resolve any employment-related disputes must submit the matter to final and binding arbitration."[2] With respect to mediation, the agreement provides that it "does not prevent Employees and Ralphs (or any of them) who are parties to any dispute(s) governed by this Policy from agreeing voluntarily to submit such dispute(s) to mediation before beginning any arbitration proceedings." With respect to payment of costs, the agreement provides that "Each party will pay the fees for his, her or its own attorneys, subject to any remedies to which that party may later be entitled under applicable law. Ralphs . . . in all cases where required by law will pay the Arbitrator's and arbitration fees. If under applicable law Ralphs . . . is not required to pay the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between each set of adverse parties." Finally, with respect to selection of an arbitrator, the agreement provides, "The parties to any arbitration as described in this Policy will select the Arbitrator by mutual agreement. If the parties do not mutually agree on the selection of the Arbitrator, any party may seek court appointment of the Arbitrator under the Federal Arbitration Act." Essentially, each of the waiver allegations involves contract interpretation and arbitration procedures, which are more properly subjects of determination by an arbitrator than the court. (*Green Tree Financial Corp. v. Bazzle, supra,* 123 S.Ct. at p. 2407.)

---

[1] On appeal, respondent also asserts that appellants' litigation conduct of filing an answer, moving for summary judgment and conducting discovery on the issue of arbitrability rather than immediately filing a petition to compel arbitration provide a further basis for finding that appellants have waived their right to compel arbitration. But because respondent did not assert these grounds for waiver in the trial court, he has waived them on appeal. (*In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 117 [95 Cal.Rptr.2d 113].)

[2] It is appellants' position that respondent "bears the responsibility to move his case forward by specifically demanding arbitration, not Ralphs. Ralphs has no duty to initiate arbitration of [respondent's] case."

Accordingly, we find that upon remand of the matter, in the event the trial court determines that a valid arbitration agreement exists which covers the parties' disputes, any issue of waiver of the right to compel arbitration is to be decided by the arbitrator and not the court.

## DISPOSITION

The judgment is reversed and the matter remanded to the trial court for a determination of issues as directed by this opinion. Appellants are to recover their costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

On May 20, 2004, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 1, 2004.