[Civ. No. 32323.　Second Dist., Div. Two.　Dec. 3, 1968.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. TAX APPEALS BOARD NO. 2 FOR THE COUNTY OF LOS ANGELES, Defendant and Appellant; SIM-CON DEVELOPERS, INC., Real Party in Interest and Respondent.

Oliver & Stoever, Norman Oliver and Thomas A. Freiberg, Jr., for Defendant and Appellant.

John D. Maharg, County Counsel, and A. R. Early, Assistant County Counsel, for Plaintiff and Respondent.

Martin Hersh for Real Party in Interest and Respondent.

HERNDON, J.—Tax Appeals Board No. 2 of the County of Los Angeles appeals from the order of the superior court setting aside one of its decisions and remanding the proceeding for rehearing and reconsideration. The challenged order was made following a hearing upon the petition of respondent County of Los Angeles for a writ of mandate filed in accordance with Code of Civil Procedure section 1094.5.

Appellant contends: (1) "The county may not bring an action against a Tax Appeals Board without express statutory authority [and] the Legislature has not granted authority to the county to bring such an action;" and (2) "There was substantial evidence in the whole record to justify the decision of the board." We have concluded that these contentions should be rejected.

Appellant is a Tax Appeals Board of the County of Los Angeles created by Los Angeles County Ordinance 4099 pursuant to the provisions of article XIII, section 9.5 of the California Constitution. On the first Monday in March 1965, Simcon Developers, Inc.[1] was the owner of certain real property located in the County of Los Angeles on which a partially completed building was being constructed.

The Los Angeles County Assessor placed an assessed value on the improvements on the property on the lien date in the amount of $500,000, i.e., 25 percent of fair market value. Simcon filed a petition for equalization which was heard by appellant board. Following the hearing appellant board reduced the assessed value to $250,000. Thereafter, as previously indicated, respondent County filed a petition to review the board's action. The trial court determined that it had jurisdiction to entertain such petition and that the board's action was not supported by substantial evidence. It therefore remanded this proceeding to the board for rehearing and reconsideration.

Appellant's initial contention need not long detain us.

---

[1]Although listed as an appellant on the briefs filed herein, the record before us fails to disclose that Simcon Developers, Inc., the real party in interest, filed notice of appeal in the superior court. Appellant board, however, is entitled to prosecute this appeal alone. "Under section 938 of the Code of Civil Procedure any party aggrieved may appeal in a proper case. Where the jurisdiction of a tribunal is involved, and the granting of a writ directed to the tribunal would have the effect of controlling or limiting that jurisdiction, the tribunal is an aggrieved party and entitled to appeal. [Citations.]" (*Koehn* v. *State Board of Equalization*, 50 Cal.2d 432, 435 [326 P.2d 502].)

Whatever may be the rule in jurisdictions where no express statutory provision has been made for reviewing the orders of administrative agencies, or other bodies exercising quasi-judicial powers, it is clear that such review is provided in California by Code of Civil Procedure section 1094.5.

"Since the enactment of section 1094.5 of the Code of Civil Procedure, it is no longer open to question that in this state the writ of mandamus is appropriate 'for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer . . .' " (*Boren* v. *State Personnel Board,* 37 Cal.2d 634, 637 [234 P.2d 981].)

"The controlling statute (Code Civ. Proc., § 1094.5) calls for the issuance of a writ to inquire into the validity of 'any final administrative order.' It is now settled that section 1094.5 governs review by mandamus after a formal adjudicatory decision by any administrative agency. (*Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 101 [280 P.2d 1].) As declared in that case: 'The decisive question is whether the agency exercises an adjudicatory function in considering facts presented in an administrative hearing. . . .' " (*Prip* v. *City of Santa Barbara,* 214 Cal.App.2d 626, 630-631 [29 Cal.Rptr. 558]; also *Allen* v. *Humboldt County Board of Supervisors,* 220 Cal.App.2d 877, 882 [34 Cal.Rptr. 232]; *People* v. *County of Tulare,* 45 Cal.2d 317, 319 [289 P.2d 11].)

Appellant, however, does not actually contend that its orders are not (1) final; (2) made as the result of a proceeding in which by law a hearing is required to be given; (3) at which evidence is required to be taken; and (4) in which discretion is vested in it in the determination of facts. Rather it appears to contend either (1) that the county, as "a political subdivision of the state for purposes of government" (13 Cal.Jur.2d, Counties, § 2, p. 348) representing those citizens resident within its boundaries, is not a "party beneficially interested" (Code Civ. Proc., § 1086) in its decisions; or (2) that each of the several Tax Appeals Boards of Los Angeles County, in legal effect, is an agency of the county itself and therefore their various orders may not be challenged by the county for the reason that in making such a challenge the county is seeking to review its own decisions. No legal prece-

dents are cited to support either of these arguments and they appeal to neither logic nor reason.

The county, acting through its statutory officer, the assessor (Gov. Code, § 24000, subd. (j)), was required to (Rev. & Tax. Code, § 1627), and did, "appear" before the board at the hearing sought to be reviewed. It unquestionably is "beneficially interested" in the matter of a loss of $250,000 in assessed valuation from its property tax base. (Cf. *Jefferson Union School Dist.* v. *City Council,* 129 Cal.App.2d 264, 267 [277 P.2d 104].)  "It is clear that where a party has a beneficial interest in the subject matter of the proceedings and a right to appear, and has appeared before the administrative agency he properly may institute proceedings for review by mandamus. [Citation.]" (*Employees Service Assn.* v. *Grady,* 243 Cal.App.2d 817, 826-827 [52 Cal.Rptr. 831]. Cf. also *Tieberg* v. *Superior Court,* 243 Cal.App.2d 277, 283 [52 Cal.Rptr. 33].)

 The contention that each of the several Tax Appeals Boards *is* the county is mistaken. Even prior to the constitutional amendment in 1962 (art. XIII, § 9.5) authorizing the creation of Tax Appeals Boards, it had been long established that "There can be no doubt that the board of equalization and the board of supervisors are two distinct constitutional bodies, although composed of the same members." (*Napa Sav. Bank* v. *County of Napa,* 17 Cal.App. 545, 548 [120 P. 449], hearing denied.)

Of course, prior to the creation of the Tax Appeals Boards, and the more clearly tripartite nature of their hearings, it never would have been theoretically or pragmatically necessary for the county, acting through its board of supervisors, to challenge the decisions made by its own members when sitting as a board of equalization. Whether the assessor or the district attorney, who, like the members of the board of supervisors, are by statute designated as officers of a county (Gov. Code, § 24000, subds. (a), (j) and (o)), might have sought review of the decisions of the board of equalization with or without authorization by the board of supervisors we need not undertake to determine. (Cf. Gov. Code, §§ 26521 et seq. and Gov. Code, § 25203.)  It is sufficient to hold, as we do, that following the establishment of Tax Appeals Boards, sitting as quasi-judicial bodies over disputes between taxpayers and officers of the county, the county may petition for judicial review of their decisions.

 On the issue of whether or not there was substantial

evidence to support the decision of appellant board, the record is so very brief that it may be quoted in full. The parties agreed that the assessment ratio was 25 percent of fair market value and, apparently, that the established basis for assessing such value in the case of partially completed improvements was the ratio between the total cost thereof and the portion of that total which had been expended prior to the lien date. Mr. Sid Hersh, who appeared on behalf of the owner, Simeon Developers, Inc., testified: "The figures indicated on the assessment represent approximately $2 million for improvements. . . . I don't know where the Assessor obtained figures which justify an overall expenditure at the lien date of $2 million. My recollection is that it was closer to a million dollars than it was to $2 million. . . . When completed, [the improvements would be worth] somewhere in the neighborhood of between three and a half million to three million seven hundred thousand dollars. We figured it at that time, very, very roughly, and I am sure that it is a rough thing, we figure the building was approximately a third completed."

Respondent properly invokes the applicable presumption that the assessment made by the assessor was regular and correct. (*Best* v. *County of Los Angeles,* 228 Cal.App.2d 655, 657 [39 Cal.Rptr. 665].) In addition, the assessor's representative in the instant case testified that information received by its cost estimator "from the H. R. Construction Corporation, this is the builder of the property, shows [a] total contract cost, $3,700,000. Cost as of March 1st, 1965, $2,112,390. The company official who relayed this information was not certain at that time whether the cost included the architect's, the engineer's, and supervision fees." Based on the above total contract cost alone, the building was 57 percent complete on the lien date.

We may assume for present purposes that "very, very rough approximations" constitute evidence sufficient to meet the taxpayers' burden of showing that the assessments were improper. We may further assume that such approximations would permit appellant board, as trier of fact, to accept the lowest such approximation as representing the true market value of the property on the lien date. Nevertheless, there would still be absolutely no evidence in the record upon which to base a finding that the property was worth $1,000,000 on said date.

The sole witness for the owner did not testify to any such figure. He initially stated that according to his "recollec-

tion," the amount expended upon the improvements "*was closer* to a million dollars than it was to $2 million." In ordinary parlance such an expression would mean that the speaker felt that the property was worth somewhat less than $1,500,000. Without speculating as to what figures might reasonably be encompassed within this estimate, it is clear that it constitutes an implicit acknowledgment that the property was worth considerably more than $1,000,000.

Thereafter this witness testified that when fully completed, the improvements on the building would be worth "*between* three and a half million to three million seven hundred thousand dollars" and that it was "approximately a third completed" on the lien date. In the context of the present proceeding this statement constituted an express concession that for assessment purposes, the property had a minimum value of $1,166,666.67 on the day in question.

The trial court therefore properly determined that the board's "implied finding that said improvements had a full cash value as of the first Monday in March 1965 of only $1,000,000 is not supported by substantial evidence in the light of the whole record, nor by any evidence at all." The decision of the board being unsupported by substantial or any evidence, the court had no alternative to "remanding the proceedings to [the board] and commanding [it] to set aside its decision to reconsider its action . . . and to conduct a rehearing" therein. ■ A court has no power to conduct a trial de novo and substitute its findings on matters exclusively within the jurisdictions of the appellant board. (*Simms* v. *County of Los Angeles,* 35 Cal.2d 303, 318 [217 P.2d 936].)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.